AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Any Safe Deposit Boxes Belonging to Nicole Le and Chap Van Le at FirstBank in Highlands Ranch, Colorado (more fully described in Attachment A). | )<br>)<br>) Case No. 20-sw-616-STV<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I am a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A attached hereto and hereby incorporated by reference.

located in the ___State and___ District of ___Colorado___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B attached hereto and hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |
| Title 21, U.S.C. § 846 | Conspiracy to Violate the Controlled Substances Act |
| Title 18, U.S.C. § 1956 & 1957 | Money Laundering |

The application is based on these facts:

See Affidavit attached hereto and hereby incorporated by reference.

☑ Continued on the attached affidavit, which is incorporated by reference.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/ Andrew Cohen*
Applicant's signature

Andrew Cohen, Special Agent, FBI
Printed name and title

Sworn to before me and: ☐ signed in my presence.

☑ submitted, attested to, and acknowledged by reliable electronic means

Date: May 15, 2020

*[Judge's signature]*
Judge's signature

City and state: Denver, Colorado

U.S. Magistrate Judge Scott T. Varholak
Printed name and title

# ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

Upon the execution of a lawful search warrant on the banking records system located in the custody and control of, or accessible by, FirstBank at 9409 South University Blvd, Highlands Ranch, Colorado, an employee of FirstBank will provide agents with information identifying the specific safe deposit box/boxes belonging to Nicole Le a/k/a Nicole My Dung Tran Le (DOB: 12/16/1979) and/or Chap Van Le (DOB: 03/02/1973).

The premises to be search pursuant to this search warrant is any safe deposit box/boxes identified as belonging to Nicole Le a/k/a Nicole My Dung Tran Le (DOB: 12/16/1979) and/or Chap Van Le (DOB: 03/02/1973) at FirstBank at 9409 South University Blvd, Highlands Ranch, Colorado.

# ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED

The following items, that constitute evidence of the commission of criminal offenses; contraband, the fruits of crimes, and things otherwise criminally possessed; and property designed or intended for use or which is or has been used as the means of committing criminal offenses, namely, violations of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Sections 1956 and 1957:

1. United States Currency, in quantities and/or packaging consistent with narcotics trafficking;

2. Firearms or records of firearm purchases;

3. Indicia of control and/or ownership of the safe deposit box/boxes;

4. Books, records, wire transfer records, phone bills, notes, receipts, ledgers, invoices, contracts, money drafts, letters of credit, money orders and cashier checks, receipts, passbooks, bank checks, loan records, diaries, cash receipts, automobile titles, bills of sales, lien information, and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting transfer, concealment and/or expenditure of money related to violations of Title 21, United States Code, Sections 841(a)(1) and 846 or Title 18, United States Code, Sections 1956 and 1957.

5. Lists of addresses and/or telephone numbers, address books, and papers reflecting names, addresses and/or telephone numbers of individuals and business involved in violations of Title 21, United States Code, Sections 841(a)(1) and 846 or Title 18, United States Code, Sections 1956 and 1957.

6. Any records and keys related to other storage units.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Andrew Cohen, Special Agent with the Federal Bureau of Investigation (FBI) being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

## BACKGROUND OF AFFIANT

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I am a Special Agent with the FBI, and have been since 2014. I am currently assigned to the Denver Division of the FBI, and specifically to the Southern Colorado Safe Streets Task Force. I investigate money laundering and drug trafficking in the normal course of my duties, and I am fully familiar with the facts of the case. During the course of my career, I have been involved in investigations involving the distribution of controlled substances and money laundering.

3. Because this affidavit is being submitted for the limited purpose of securing the requested search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C §§ 1956 and 1957 are present at the location described.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officials, and

1

witnesses. Specifically, I have obtained information from members of the Colorado Springs Police Department (CSPD) Metro Vice, Narcotics, and Intelligence (MVNI) unit. I have no reason to doubt the truthfulness of the information I have received.

## PURPOSE OF AFFIDAVIT

5. I anticipate that, on or about May 15 – May 20, 2020, agents will execute a search warrant granted by this court on the banking records system located in the custody and control of, or accessible by, FirstBank at 9409 South University Blvd, Highlands Ranch, Colorado. The execution of that warrant will yield information identifying the specific safe deposit box/boxes belonging to Nicole Le a/k/a Nicole My Dung Tran Le (DOB: 12/16/1979) and/or Chap Van Le (DOB: 03/02/1973) at FirstBank, 9409 South University Boulevard, Highlands Ranch, Colorado.

6. This affidavit is provided in support of an application for a search warrant for the safe deposit box/boxes identified as belonging to Nicole Le a/k/a Nicole My Dung Tran Le (DOB: 12/16/1979) and/or Chap Van Le (DOB: 03/02/1973) at FirstBank at 9409 South University Blvd, Highlands Ranch, Colorado (TARGET LOCATION).

7. Based on the information set forth below, I have probable cause to believe that within the premises to be searched as described in Attachment A, there is and will be proof that constitutes evidence of the commission of criminal offenses; contraband, the fruits of crime, and things otherwise criminally possessed; and property designed for or intended for use or which is or has been used as the means of committing criminal offenses. The evidence to be searched for and seized is set forth in Attachment B, which is attached hereto and incorporated herein by reference.

## MODUS OPERANDI OF MARIJUANA TRAFFICKING ORGANIZATIONS

8.      I have had experience, training, and communication with other law enforcement personnel who specialize in the area of illegal drug trafficking and documentation and the detection of proceeds from drug trafficking. I also have experience in debriefing defendants and informants as witnesses who have personal knowledge of drug trafficking organizations. Such individuals often have personal knowledge regarding the methods, transportation, and distribution of the drugs and money in large scale controlled substance distribution operations.

9.      I know, based on training and experience, as well as from information relayed to me during the course of my official duties:

   a.   A significant amount of marijuana is produced in Colorado, then harvested, repackaged, and transported to various cities throughout the United States for illegal retail distribution.

   b.   Persons involved in large-scale drug trafficking conceal, in various locations, caches of drugs, drug paraphernalia, amounts of jewelry, automobile titles, deeds to property, and other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money acquired from engaging in narcotics trafficking activities.

   c.   Drug traffickers have maintained at their locations, including the residences where they live, in their vehicles, and in off-site "stash" locations: money, ledgers, narcotic supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, and/or times when narcotics were obtained, transferred, sold, distributed, and/or concealed and that drug traffickers

sometimes store drugs, their proceeds, and documents relating to drug activities at storage facilities in an effort to thwart law enforcement efforts to find them.

    d.    When drug traffickers amass large quantities of cash from the sale of drugs, the drug traffickers often attempt to legitimize these profits through the use of banks and financial institutions and their attendant services that include accounts, securities, travelers checks, cashier's checks, money orders, wire transfers, stock certificates, bonds, certificates of deposit, and safe deposit boxes.

    e.    That drug traffickers often place assets in names of relatives and close friends in order to avoid detection of those assets by law enforcement agencies; and that, even though these assets are in other persons' names, the drug dealers retain records, documents, and deeds reflecting the purchase and/or control of those assets while continuing to use those assets and exercise dominion and control over them.

    f.    That it is common practice for large scale narcotics traffickers to travel to their purchase and distribution areas to facilitate their trafficking; that after purchasing drugs, narcotics traffickers will transport or cause to be transported narcotics to areas in which they will distribute the drugs; and that methods of transportation include commercial airlines, private airplanes, trains, buses, and rental and private automobiles.

    g.    That drug traffickers take or cause to be taken photographs of themselves, their associates, their property, and their product; and that these traffickers often maintain these photographs at their premises, within vehicles, or as stored electronic images.

    h.    That drug trafficking organizations maintain a variety of documents related to drug trafficking, including ledgers, hotel receipts, wire transfer paperwork, apartment rental agreements, cell phone bills, passports, photographs, credit card bills,

vehicle registration documents, vehicle rental receipts, utility bills, and other documents that provide evidence of the illegal conduct of such organizations.

     i.     That drug dealers commonly have in their possession, that is on their persons, at their residence and/or at their stash houses and in their automobiles, firearms, including: handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons that are used to protect and secure the drug trafficker's property, including narcotics, narcotic paraphernalia, currency, jewelry, and records. Courts have recognized that firearms and ammunition are a tool of the drug trafficking trade; that drug traffickers utilize firearms to protect themselves from rip-offs or from their drug related items being stolen and/or seized by law enforcement.

     j.     There are many reasons why drug traffickers maintain evidence for long periods of time. The evidence may be innocuous at first glance (*e.g.*, financial, credit card and banking documents, travel documents, receipts, documents reflecting purchases of assets, personal calendars, telephone and address directories, check books, videotapes and photographs, utility records, ownership records, letters and notes, tax returns and financial records, escrow files, telephone and pager bills, keys to safe deposit boxes, packaging materials, computer hardware and software), but have significance and relevance when considered in light of other evidence. The drug trafficker may no longer realize he/she still possesses the evidence or may believe law enforcement could not obtain a search warrant to seize the evidence. The drug trafficker may also be under the mistaken belief that he/she has deleted, hidden, or further destroyed any computer related evidence. However, that evidence may still be retrievable by a trained forensic computer expert.

k.     It is common for drug traffickers to secret contraband, proceeds of drug sales and transactions in secure locations within their residence, including "stash houses," in vehicles, or locations other than their primary residence for ready access and to conceal those items from law enforcement authorities.

## FACTS OF THE INVESTIGATION

### *Information about those involved*

10.    Quang Tran (DOB: 01/02/1961) is a resident at 12367 N. Peyton Highway, Colorado Springs, Colorado. Tran is the brother of Nicole Le, a suspected owner of the safe deposit box(es) at FirstBank at 9409 South University Blvd, Highlands Ranch, Colorado.

11.    My Hanh Tran (DOB: 01/03/1971) is a resident at 11818 Mahan Road, Colorado Springs, Colorado. Tran is the sister of Nicole Le.

12.    Nicole Le, a/k/a Nicole My Dung Tran Le (DOB: 12/16/1979) is a resident of 4911 Montvale Drive, Highland Ranch, Colorado. A search warrant issued by a State of Colorado District Court Judge was executed at Le's residence on May 14, 2020. The results of that search warrant will be discussed below.

13.    Chap Le (DOB: 03/02/1973) is also a resident of 4911 Montvale Drive, Highlands Ranch, Colorado. Chap and Nicole Le are believed to be married.

14.    I was unable to locate prior criminal history for the individuals mentioned above.

### *Search warrant on March 11, 2020, in Colorado Springs, CO*

15.    On March 11, 2020, the CSPD MVNI executed a lawfully obtained state search warrant at 12367 N. Peyton Highway, Colorado Springs, Colorado. This is the

residence of Quang Tran, Le's brother. Among other things, detectives seized 522 marijuana plants in various stages of growth and approximately 11.5 pounds of processed, drying marijuana. The estimated street value of this marijuana is hundreds of thousands of dollars.

16. Tran and his wife, Nga Huynh (DOB: 04-23-75), both admitted their sole source of income is growing and selling marijuana. Indicia linking both Tran and Huynh to 4911 Montvale Drive, Highlands Ranch, Colorado, was located during the search warrant.

*Search warrant on March 17, 2020, in Colorado Springs, CO*

17. On March 17, 2020, the CSPD MVNI executed another lawfully obtained search warrant at 11818 Mahan Road, Colorado Springs, Colorado. This is the residence of My Hanh Tran, Le's sister. Among other things, detectives seized $10,850 in U.S. currency from the residence. At the time of warrant execution, My Hanh attempted to conceal $7,000 inside a sock within her purse and leave with it.

18. Nicole Le's mother, Be Le (DOB: 04/08/37), also resides at 11818 Mahan Road.

19. Indicia for 4911 Montvale Drive, Highlands Ranch, Colorado, was also located inside the house at 11818 Mahan Road.

*Search warrant executed at 4911 Montvale Drive on May 14, 2020*

20. Detectives with the CSPD MVNI applied for, and were granted a State of Colorado search warrant for 4911 Montvale Drive, Highlands Ranch, Colorado. The warrant was executed on May 14, 2020. Both Chap Le and Nicole Le were present at the time of the warrant execution, which was approximately 10:00 a.m.

21.     Chap and Nicole were interviewed independently. Chap claimed he earns $48,000/year (equated to $4,000/month) working for Southwest Airlines as a baggage handler. Nicole stated she makes approximately $30,000/year (equated to $2,500/month) working as a nail tech; however, detectives located a sworn financial statement in which she claims to make $1,600/month.

22.     Chap stated his monthly mortgage payment is $2,900 and he pays approximately $600 a month for utilities. Just his claimed mortgage payment and utilities expenses are nearly equal to Chap's gross earnings. Investigators also learned that, between Chap and Nicole, they have three separate automotive loans, each with monthly payments. Chap stated he has no other forms of income. Based on facts contained with this affidavit, I submit it is reasonable that Chap and Nicole primarily earn their money from the unlawful sale of marijuana.

23.     Detectives located a marijuana grow operation in the basement of 4911 Montvale Drive, although the plants had been cut. The pots, still full of soil and with stems and root balls, were split between two grow rooms.

24.     A calendar was located in the grow area detailing a recent growth cycle. The last week of April 2020 was labeled "week seven," which would be near harvesting for a typical two-stage marijuana grow. The marijuana grows at 12367 N. Peyton Highway and 11818 Mahan Road were also two-stage grows.

25.     Detectives also located ammunition, holsters, and original cases for several hand guns. No firearms were located within 4911 Montvale Drive.

26.     Detectives located 2.59 pounds of processed marijuana, divided into 10 vacuum-sealed bags. A sample from the bags presumptively tested positive for the presence of THC. The division of the marijuana into vacuum-sealed bags is indicative of marijuana trafficking.

27. During his interview, Chap stated he grows the marijuana for Nicole, who he said has a valid medical marijuana registry card. No medical marijuana paperwork was located inside the house, and Nicole denied having any knowledge of the plants beyond they were grown in the basement, and she denied any ownership of the plants.

28. Investigators found approximately 20 Louis Vuitton handbags and luggage items in the master bedroom closet. Louis Vuitton handbags typically retail for approximately $1,200 - $3,900 each. Detectives also located a Rolex watch box and warranty paperwork, but the watch was not found. I submit that the Le's would likely not be able to afford such luxury items solely on the income amounts provided during their interviews, their claimed monthly expenses, and the expenses investigators discovered through other research.

29. Investigators also located a receipt for a safe deposit box at FirstBank dated 10/31/2007. The branch was listed as "High," which investigators believed to be a reference to Highlands Ranch, and the branch located at 9409 South University Blvd, Highlands Ranch, Colorado. A box number exists on the receipt, but is somewhat illegible, and the box number cannot be ascertained with certainty. Furthermore, the receipt is from more than 12 years before the search of 4911 Montvale Drive.

30. No cash was located within 4911 Montvale Drive.

*Information obtained from FirstBank at 9409 South University Blvd*

31. Investigators visited FirstBank at 9409 South University Blvd on May 14, 2020, after learning of the possible existence of a safe deposit box, as mentioned above. Employees of FirstBank confirmed the existence of at least one safe deposit box belonging to Nicole or Chap Le, but would not disclose the box number(s) without legal process.

9

*Identification of the Particular Safe Deposit Box(es)*

32. Investigators intend to execute a search warrant granted by this court to compel FirstBank to disclose the specific safe deposit box/boxes belonging to Nicole Le a/k/a Nicole My Dung Tran Le (DOB: 12/16/1979) and Chap Van Le (DOB: 03/02/1973) located at the FirstBank branch at 9409 South University Blvd, Highlands Ranch, Colorado. Upon obtaining the box number(s) from a FirstBank employee, agents will execute this search warrant on the TARGET LOCATION.

## CONCLUSION

33. Based on the aforementioned facts, and on my training and experience, your affiant submits that, probable cause exists to believe that evidence related to violations 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C 1956 and 1957 (as described in Attachment B), is presently and/or will be located at the TARGET LOCATION identified in Attachment A. I further submit that there is probable cause to believe that fruits and/or instrumentalities of these crimes will be located at and within the TARGET LOCATION. I therefore respectfully request that a search warrant be issued authorizing the search of the TARGET LOCATION, for items described in Attachment B.

I, Andrew Cohen, a FBI Special Agent, being duly sworn according to law, hereby state that the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information and belief.

*s/ Andrew Cohen*
Andrew Cohen
Special Agent
Federal Bureau of Investigation

Submitted, attested to, and acknowledged by reliable electronic means on this \_\_15th\_\_ day of May, 2020.

_____
HON. SCOTT T. VARHOLAK
UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

**This Application and Affidavit was reviewed and submitted by AUSA Peter McNeilly.**